UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID BRIGGS ENTERPRISES, LLC,** | § |
| | §   CIVIL ACTION |
| Plaintiff, | § |
| | §   NO. |
| v. | § |
| | §   JUDGE |
| **407 BOURBON, LLC D/B/A** | § |
| **CRESCENT CITY PIZZA WORKS,** | §   MAG. JUDGE |
| | § |
| Defendant. | § |

## COMPLAINT

Plaintiff, David Briggs Enterprises, LLC ("Plaintiff" or "DBE"), by and through undersigned counsel, files this Complaint against Defendant, 407 Bourbon, LLC d/b/a Crescent City Pizza Works ("Defendant"), and hereby alleges as follows:

### I. NATURE OF THE ACTION

1. DBE is a multinational beverage and foodservice retailer that owns, operates, and franchises its famous New Orleans Original Daiquiris and Fat Tuesday retail units, which are known around the world for their specialty frozen drinks, including, most notably, the infamous 190 OCTANE daiquiri.

2. The New Orleans Original Daiquiris and Fat Tuesday brands have become targets for individuals and entities such as Defendant who wish to piggyback on the goodwill and commercial success of the New Orleans Original Daiquiris and Fat Tuesday brands that DBE has spent considerable time, effort, and resources developing.

3. Through this action, DBE combats the infringing activities of Defendant.

## II. PARTIES

4. DBE is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 1115 N. Causeway Blvd., Suite 200, Mandeville, Louisiana, 70471.

5. Upon information and belief, Defendant, 407 Bourbon, LLC d/b/a Crescent City Pizza Works is a limited liability company organized and existing under the laws of the State of Louisiana and having its principal place of business at 2201 Ridgelake Drive, Metairie, Louisiana, 70001. Defendant owns and operates the restaurant and bar "Crescent City Pizza Works," located at 407 Bourbon Street, New Orleans, Louisiana, 70130.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, and 1338(a) because the claims herein arise out of federal trademark laws as codified in 15 U.S.C. §1114 and 15 U.S.C. §1125(a).

7. This Court has general personal jurisdiction over Defendant due to its residence and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant due to the nature and quality of its actions toward the state in which this Court is located. The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

8. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b). As described herein, Defendant resides in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendant has extensive contacts with this judicial district relating to DBE's claims. Defendant conducts regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of DBE.

## IV.  FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*A.        DBE's 190 OCTANE Trademarks*

9. In 1983, founder David Briggs, Jr. launched the first New Orleans Original Daiquiris location in Hammond, Louisiana with the goal of providing a welcoming environment for locals to enjoy Briggs' quality daiquiri cocktails.

10. Shortly thereafter, in 1984, DBE launched Fat Tuesday, a sister concept of New Orleans Original Daiquiris, with the opening of the first Fat Tuesday retail unit in Atlanta, Georgia.

11. For more than **forty (40) years**, DBE has proudly commemorated the spirit and culture of New Orleans through its vibrant and unique New Orleans Original Daiquiris and Fat Tuesday brands.

12. The cherished New Orleans Original Daiquiris and Fat Tuesday brands have since grown into an international phenomenon, with over **fifty (50)** New Orleans Original Daiquiris locations in and throughout Louisiana and over **ninety (90)** Fat Tuesday locations throughout the United States and internationally.

13. DBE's New Orleans Original Daiquiris and Fat Tuesday retail units have become famous for their frozen specialty drinks and drive-through daiquiri offerings, including DBE's world-renowned signature daiquiri, the "190 Octane."

14. Since at least as early as 1984, DBE has, by itself or through its predecessor(s) in interest, been using the mark 190 OCTANE, both alone and in combination with certain other words and/or designs, in connection with providing alcoholic cocktails and other related goods and services, and DBE is the owner of federal and common law trademark rights in and to the mark 190 OCTANE in connection with the same.

15. DBE owns the following federal trademark registrations for the 190 OCTANE mark, both of which have achieved incontestable status:

| Mark | Registration No./ Date | (1) First Use (2) In Commerce | Goods/Services |
|---|---|---|---|
| 190 OCTANE | U.S. Reg. 1,773,133 (May 25, 1993) | At least as early as (1) Oct. 1983 (2) Sep. 1984 | Int'l Class 033: prepared alcoholic cocktails |
| 190 OCTANE | U.S. Reg. 1,794,403 (Sep. 21, 1993) | At least as early as (1) Sep. 1989 (2) Feb. 1990 | Int'l Class 032: non-alcoholic cocktail mixes |

16. True and correct copies of the Registration Certificates for the above-referenced trademarks are attached hereto as **Exhibit "A"** *in globo*. DBE's federally-registered and state common law 190 OCTANE trademarks are hereinafter collectively referred to as the "190 OCTANE Trademarks."

17. DBE continues to preserve and maintain its rights with respect to the 190 OCTANE Trademarks, including those registered with the United States Patent and Trademark Office (the "USPTO"), in connection with its goods and services.

18. DBE has continuously used the 190 OCTANE Trademarks, and variants thereof, in a prominent and distinctive manner in interstate commerce so as to distinguish the source of its goods and services from those of others and has spent significant effort and sums of money in advertising and otherwise promoting its goods and services under the 190 OCTANE Trademarks across the world, including through its New Orleans Original Daiquiris and Fat Tuesday retail units, its websites, and its nationwide distribution network.

19. As noted above, DBE collectively operates more than **one-hundred forty (140)** New Orleans Original Daiquiris and Fat Tuesday retail units throughout the United States and beyond, ***all of which*** prominently use the 190 OCTANE Trademarks to offer, advertise, and promote DBE's world-renowned orange daiquiri cocktail. Furthermore, due in large part to the substantial commercial success of the Fat Tuesday and New Orleans Original Daiquiris retail

concepts, the 190 OCTANE Trademarks have garnered extensive media coverage in connection with DBE's infamous signature daiquiri cocktail and other related goods and services.

20. Due to DBE's longstanding and exclusive use of the 190 OCTANE Trademarks, the growth and success achieved under the 190 OCTANE Trademarks, and the substantial time, money, and effort DBE has expended in promoting its goods and services under the 190 OCTANE Trademarks, the 190 OCTANE Trademarks have become, through favorable public acceptance and recognition, exclusive assets of significant value to DBE as symbols of its goodwill and the quality of its daiquiri cocktails and related goods and services.

21. For more than forty years, the 190 OCTANE Trademarks have served as an indispensable thread that ties the New Orleans Original Daiquiris and Fat Tuesday brands together, the success of which is due in large part to the widespread popularity of DBE's iconic "190 Octane" daiquiri cocktail.

22. As a result of DBE's extensive use and promotion of the 190 OCTANE Trademarks, the trade and purchasing public have come to recognize DBE'S 190 OCTANE Trademarks as a designation identifying DBE as the source of its frozen daiquiri cocktails. Accordingly, DBE's 190 OCTANE Trademarks have developed and represent the valuable goodwill and reputation of DBE, which rightfully belongs exclusively to DBE.

### B. *Defendant's Infringing Conduct*

23. Upon information and belief, Defendant uses the mark 190 ANTIFREEZE, and/or variants thereof, in connection with providing frozen alcoholic cocktails, and other goods and services that are closely related to those provided by DBE. A true and correct copy of Defendant's website displaying the 190 ANTIFREEZE mark is attached hereto as **Exhibit B.**

24. Upon information and belief, Defendant began using the mark 190 ANTIFREEZE in connection with the above-referenced goods as recently as 2022. In particular, evidence gathered from Defendant's social media accounts indicates that Defendant did not even begin selling frozen daiquiri cocktails until as recently as July of 2022. True and correct copies of

Defendant's social media posts announcing Defendant's offering of daiquiris at its bar and restaurant are attached hereto as **Exhibit C** *in globo*.

25. DBE has never authorized Defendant to use the 190 OCTANE Trademarks or any other variations thereof, including, but not limited to, the confusingly similar 190 ANTIFREEZE mark.

26. Upon information and belief, there is no evidence indicating that Defendant used the mark 190 ANTIFREEZE, or variants thereof, prior to the dates on which DBE began using the 190 OCTANE Trademarks in connection with its own goods and services.

27. Rather, Defendant's unauthorized use of the 190 ANTIFREEZE mark began well after DBE legally established the existence and significant value of the 190 OCTANE Trademarks, including after DBE's adoption, use, and federal registration of the 190 OCTANE Trademarks.

28. Accordingly, DBE has, and continues to have, exclusive priority over Defendant to use the 190 OCTANE Trademarks, and variants thereof, in connection with its prepared alcoholic beverages and other related goods and services that are similar or identical to those offered by Defendant – including, in particular, frozen daiquiris.

    **C.** ***Defendant's Mark Creates a Likelihood of Confusion that is Highly Detrimental to DBE.***

29. Section 2(d) of the Lanham Act prohibits the use of a mark that closely resembles a previously registered or applied for mark such that it is likely that consumers would be confused, mistaken, or deceived as to the source of the goods or services of the parties. The likelihood of confusion analysis involves a multi-factor test that hinges largely upon: (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; and (2) the similarity or dissimilarity of the goods or services for which the marks are being used or applied. *In re E. I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973).

30. In this case, Defendant's 190 ANTIFREEZE mark is virtually identical to DBE's 190 OCTANE Trademarks, with the only difference being that it replaces the word "OCTANE"

6

with "ANTIFREEZE." Indeed, **both marks** begin with the identical number "190," which is likely to be perceived by consumers as the dominant element of both marks and is generally the first element consumers will notice in viewing the marks.[1]

31. While Defendant's mark is followed by the term "Antifreeze," this minute distinction does little, if anything, to obviate against consumer confusion given the similar meanings and connotations associated with these two words– **both of which** are used to refer to essential engine components.

32. Furthermore, Defendant is using the confusingly similar 190 ANTIFREEZE mark in connection with identical goods as those offered under DBE's 190 OCTANE Trademarks – **both of which** are used in connection with frozen daiquiris.

33. Defendant's use of the mark 190 ANTIFREEZE in connection with frozen daiquiris and other related goods and services is likely to cause confusion, mistake, and/or deception among consumers in the relevant market as to the source, affiliation, and/or origin of Defendant's goods and services. Indeed, given the substantial similarities between the two marks and the identical goods for which they are used, there can be no question that consumers will likely assume an affiliation between the parties.

34. Such confusion is further aggravated by the fact that Defendant is using the infringing 190 ANTIFREEZE mark in connection with a daiquiri that is the same vibrant orange color as DBE's world-renowned 190 OCTANE daiquiri.

35. DBE has, for many years, used the color orange to promote its 190 OCTANE daquiri and to distinguish its signature daquiri from those of others. As a result of DBE's

---

[1] *See Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En* 1772, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those doords first").

longstanding and prevalent use of the color orange in connection with the 190 OCTANE daquiri, consumers have come to recognize this color as signifying DBE's infamous 190 OCTANE daquiri.

36. Defendant's use of the confusingly similar 190 ANTIFREEZE mark in connection with a daquiri that *is the exact same orange color* as DBE's 190 OCTANE daquiri is undoubtedly intended to allow Defendant to ride the coattails of DBE and unfairly profit off the hard-earned success DBE has achieved under the 190 OCTANE Trademarks.

37. Indeed, it has become exceedingly obvious that Defendant deliberately chose to use the color orange to confuse consumers as to the source and origin of its 190 ANTIFREEZE daquiri and to falsely suggest an affiliation with DBE's 190 OCTANE daquiri. This is particularly apparent given that antifreeze itself is associated with a variety of other colors, including, in particular, yellow, pink, red, blue, and green.

38. The circumstances surrounding Defendant's adoption and use of the confusingly similar 190 ANTIFREEZE mark strongly indicate that Defendant has engaged in these infringing activities with full knowledge of DBE's rights in and to the 190 OCTANE Trademarks, and that such infringing acts are deliberate and willful.

39. In fact, Defendant's business, located at 407 Bourbon Street, is located **directly across the street** from DBE's headquarters.

40. Furthermore, prior to learning of Defendant's infringing activities, DBE engaged in a series of discussions with the owner and operator of Defendant's business, Creole Cuisine Restaurant Concepts ("CCRC"), regarding DBE's potential purchase of one or more of CCRC's restaurant locations. Ultimately, however, the parties were unable to negotiate a mutually agreeable price, thereby causing such discussions to cease.

41. Upon information and belief, Defendant only began using the confusingly similar 190 ANTIFREEZE mark *after* the discussions between DBE and CCRC proved unsuccessful, which further suggests that Defendant is deliberately committing these infringing activities for purposes of capitalizing off DBE's hard-earned success and reputation.

### D.     *Cease-and-Desist Correspondence to Defendant, and Defendant's Demur*

42.    On March 31, 2023, counsel for DBE issued a cease-and-desist letter to Defendant, a true and correct copy of which is attached hereto as **Exhibit D**. This cease-and-desist letter provided specific notice of the following, among other items: (i) DBE's ownership of the 190 OCTANE Trademarks; (ii) DBE's confirmation that Defendant's use of the mark 190 ANTIFREEZE infringes upon DBE's exclusive rights in and to the 190 OCTANE Trademarks; (iii) DBE's demand that Defendant cease its use of the mark 190 ANTIFREEZE and confusingly similar variants thereof in connection with offering frozen daiquiri cocktails and other related goods and services; and (iv) the statutory prohibition of the unauthorized use of DBE's intellectual property.

43.    DBE's March 31, 2023 cease-and-desist correspondence requested that Defendant contact DBE's counsel to discuss pre-litigation resolution of the legal issues arising from the unauthorized use of DBE's intellectual property. Counsel for Defendant eventually responded to DBE's correspondence, but such communication did not result in a resolution of DBE's claims due to Defendant's unwillingness to cease its use of the confusingly similar 190 ANTIFREEZE mark in connection with its identical goods and services.

### E.     *Defendant's Continued Infringement*

44.    Defendant is on actual notice of DBE's trademark rights and is aware of DBE's opposition to Defendant's use of the mark 190 ANTIFREEZE and variants thereof that are confusingly similar to DBE's 190 OCTANE Trademarks in connection with its respective goods and/or services.

45.    Defendant is not, and never has been, authorized by DBE or any of its predecessors in interest to market, offer for sale, and/or sell goods and services under the 190 OCTANE Trademarks or any other variations thereof, including, but not limited to, the substantially similar 190 ANTIFREEZE mark.

46. DBE has no control over the nature, quality, or pricing of Defendant's goods, services, promotional activities, or any other aspect of Defendant's business. Defendant's unlawful infringement of DBE's widely-recognized 190 OCTANE Trademarks falsely denotes its association with Defendant's goods and services, and places DBE's hard-earned reputation behind a business and products over which it has no affiliation or control.

47. Defendant deliberately uses words, symbols, colors, and names that are confusingly similar or identical to the 190 OCTANE Trademarks (and the goods offered thereunder) to confuse consumers and aid in the promotion and sales of Defendant's own bar and restaurant services by creating a false association between Defendant and DBE's widely-recognized products and brand.

48. As outlined above, Defendant's use of the mark 190 ANTIFREEZE, and/or similar variants thereof, is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that Defendant's goods and services are authorized by, associated with, sponsored by, and/or endorsed by DBE when, in fact, they are not.

49. The likelihood of confusion, mistake, and deception brought about by Defendant's misappropriation of DBE's 190 OCTANE Trademarks causes irreparable harm to the goodwill symbolized by the 190 OCTANE Trademarks and the hard-earned reputation for quality embodied by said Trademarks, for which there is no adequate legal remedy.

## V. CAUSES OF ACTION

### COUNT 1

**Trademark Infringement (15 U.S.C. §1114)**

50. DBE specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

51. Defendant has infringed DBE's federally-registered 190 OCTANE Trademarks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or selling frozen daiquiri cocktails and other related goods and services under the confusingly similar 190 ANTIFREEZE mark, and/or variations thereof that are virtually identical to or substantially indistinguishable from DBE's 190 OCTANE Trademarks.

52. Defendant's use of the 190 ANTIFREEZE mark in conjunction with prepared alcoholic beverages, frozen daiquiri cocktails and other related goods and services is without DBE's permission or authority and is likely to cause confusion, mistake and/or deception among the purchasing public and also constitutes initial interest confusion.

53. Defendant's unauthorized use of the 190 ANTIFREEZE mark has been made notwithstanding DBE's well-known and prior established rights in and to the 190 OCTANE Trademarks and with constructive and actual notice of DBE's federal registration rights under 15 U.S.C. § 1072.

54. Defendant's conduct constitutes infringement of DBE's federally-registered 190 OCTANE Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

55. DBE has been damaged as a result of Defendant's infringement of the 190 OCTANE Trademarks. DBE alleges, on information and belief, that Defendant's sale and distribution of frozen cocktails and related goods and services under the 190 ANTIFREEZE mark have resulted in lost sales to DBE, have reduced the business and profits of DBE, and have injured the general reputation of DBE, all to DBE's damage in an amount not yet ascertainable, but that will be determined during this action.

56. DBE alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but that will be determined during this action.

57. Upon information and belief, Defendant acted intentionally and/or willfully in infringing upon the 190 OCTANE Trademarks, with knowledge of DBE's exclusive rights in and to the 190 OCTANE Trademarks, and with knowledge that Defendant's usage of the 190 ANTIFREEZE mark, and/or variants thereof that are confusingly similar to DBE's 190 OCTANE Trademarks, was unauthorized and was, in fact, infringing.

58. As a result of Defendant's wrongful conduct, DBE is entitled to recover its actual damages, Defendant's profits attributable to the infringement, and treble damages and attorney

fees pursuant to 15 U.S.C. § 1117 (a) and (b). Alternatively, DBE is entitled to statutory damages under 15 U.S.C. § 1117 (c).

59. Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to DBE's business, reputation, and goodwill in the federally-registered 190 OCTANE Trademarks, for which DBE has no adequate remedy at law.

## COUNT 2
### Trademark Infringement (15 U.S.C. §1125(a))

60. DBE specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

61. Defendant has infringed DBE's common law 190 OCTANE Trademarks in interstate commerce by various acts, including, without limitation, by advertising, marketing, offering for sale, and/or selling frozen daiquiri cocktails and other related goods and/or services under the confusingly similar 190 ANTIFREEZE mark, and/or variations thereof that are virtually identical to or substantially indistinguishable from DBE's 190 OCTANE Trademarks.

62. Defendant's use of the 190 ANTIFREEZE mark in connection with frozen daiquiri cocktails is without DBE's permission or authority and is likely to cause confusion, mistake and/or deception among the purchasing public and also constitutes initial interest confusion.

63. Defendant's use of the 190 ANTIFREEZE mark has been made notwithstanding DBE's well-known and prior established rights in the 190 OCTANE Trademarks and with actual notice of DBE's common law trademark rights.

64. Defendant's conduct constitutes infringement of the common law 190 OCTANE Trademarks in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

65. DBE has been damaged as a result of Defendant's infringement of the 190 OCTANE Trademarks. DBE alleges, on information and belief, that Defendant's sale and distribution of frozen cocktails and related goods and services under the 190 ANTIFREEZE mark have resulted in lost sales to DBE, have reduced the business and profits of DBE, and have injured

the general reputation of DBE, all to DBE's damage in an amount not yet ascertainable, but that will be determined during this action.

66. DBE alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but that will be determined during this action.

67. Upon information and belief, Defendant has acted intentionally and/or willfully in infringing upon the 190 OCTANE Trademarks, with knowledge of DBE's exclusive rights in and to the 190 OCTANE Trademarks, and with knowledge that Defendant's usage of the 190 ANTIFREEZE mark, and/or variants thereof that are confusingly similar to DBE's 190 OCTANE Trademarks, was unauthorized and was, in fact, infringing.

68. Defendant's infringing activities have caused, and, unless enjoined by this Court, will continue to cause, irreparable harm and other damage to DBE's business, reputation and goodwill in its common law 190 OCTANE Trademarks.

## COUNT 3

**False Designation of Origin,
False and Misleading Description or Representation of Fact
(15 U.S.C. § 1125, *et seq.*)**

69. DBE specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

70. DBE advertises, markets, and sells prepared alcoholic beverages and other related goods and services under the 190 OCTANE Trademarks and uses these Trademarks to distinguish its goods and services from those of others in the bar and restaurant and alcohol distribution industries.

71. As a result of DBE's continuous and longstanding use of the 190 OCTANE Trademarks, the 190 OCTANE Trademarks have come to mean, and are understood by customers and the public to signify, the goods and services of DBE.

72. Defendant has caused its frozen daiquiri cocktails and other related goods and services to enter interstate commerce under the confusingly similar 190 ANTIFREEZE designation and/or variants thereof that are virtually identical to or substantially indistinguishable from DBE's 190 OCTANE Trademarks.

73. Defendant's unauthorized use in commerce of the mark 190 ANTIFREEZE, and/or variants thereof that are confusingly similar to DBE's 190 OCTANE Trademarks, constitutes a false designation of origin which is likely to cause confusion, mistake, and/or deception among consumers as to the affiliation, connection, or association of Defendant with DBE and as to the origin, sponsorship, and/or approval of Defendant's daiquiri products and other related goods and services by DBE.

74. Upon information and belief, Defendant's wrongful conduct includes its use of the mark 190 ANTIFREEZE in connection with its frozen alcoholic beverages, bar and restaurant services, and other related goods and/or services.

75. Upon information and belief, Defendant's false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with providing frozen daiquiris, prepared alcoholic beverages, bar and restaurant services, and/or other related goods and/or services under the mark 190 ANTIFREEZE.

76. Defendant's false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, and origin of its products and commercial activities.

77. Defendant's use of the mark 190 ANTIFREEZE and its false and misleading representations and descriptions of fact in interstate commerce in connection with the above-referenced goods has either deceived or has the capacity to deceive a substantial segment of potential and existing consumers and clients, and such deception is material, in that it is likely to influence consumers' purchasing decisions.

78. Upon information and belief, Defendant has engaged in such wrongful conduct with the purpose of misleading or confusing consumers and the public as to the origin and

authenticity of the goods advertised, marketed, offered, and/or sold by Defendant and with the purpose of trading upon DBE's goodwill and business reputation. Defendant's acts are in violation of 15 U.S.C. § 1125 in that Defendant has used in connection with its goods a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion and mistake, and is likely to deceive consumers as to the affiliation, connection, or association of Defendant with DBE and as to the origin, sponsorship, and approval of Defendant's goods, services and commercial activities by DBE. Defendant's conduct constitutes (a) false designation of origin, (b) false or misleading representation or description, and (c) false or misleading representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

79. Defendant's wrongful conduct is likely to continue unless restrained and enjoined by this Court.

80. As a result of Defendant's wrongful conduct, DBE is entitled to recover its actual damages, Defendant's profits attributable to its infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

81. Further, DBE is entitled to injunctive relief and to an order compelling Defendant to cease all use of the mark 190 ANTIFREEZE and variants thereof that are confusingly similar to DBE's 190 OCTANE Trademarks in connection with its daiquiri products, alcoholic beverages, bar and restaurant services, and/or other related goods and services. DBE has no adequate remedy at law for Defendant's wrongful conduct because, among other things, Defendant's wrongful conduct and the resulting damage to DBE is continuing.

## COUNT 4

### Federal Unfair Competition, Passing Off, and False Advertising
### (15 U.S.C. § 1125(a))

82. DBE specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

83. Defendant has made false and misleading representations and descriptions of fact in connection with its goods and/or services, including, without limitation, its daiquiri products.

84. Defendant has used, and continues to use, the mark 190 ANTIFREEZE to compete unfairly with DBE and to deceive consumers.

85. Defendant's unauthorized use in commerce of the mark 190 ANTIFREEZE, which is confusingly similar to DBE's 190 OCTANE Trademarks, has been done with the intent to deceive the public into believing that the goods offered by Defendant are provided by, endorsed by, approved by, sponsored by, or affiliated with DBE, when, in fact, they are not.

86. Defendant's wrongful activities as set forth herein were committed with the intent to pass off Defendant's business and/or goods as the business and/or goods of DBE or as a business and/or goods approved by, authorized by, sponsored by, endorsed by, or affiliated with, DBE and with the intent to deceive and defraud the public.

87. Defendant's conduct constitutes false advertising, federal unfair competition, and passing off in violation of 15 U.S.C. § 1125(a).

88. Defendant's conduct is likely to continue unless restrained and enjoined by this Court.

89. As a result of Defendant's wrongful conduct, DBE is entitled to recover its actual damages, Defendant's profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117 (a) and (b).  Alternatively, DBE is entitled to statutory damages under 15 U.S.C. § 1117 (c).

90. Further, DBE is entitled to injunctive relief and to an order compelling Defendant to cease all use of the 190 ANTIFREEZE mark, and/or variants thereof, in connection with its business name, facilities, alcoholic beverages, daiquiri products, bar and restaurant services, and other related goods and services.  DBE has no adequate remedy at law for Defendant's wrongful conduct because, among other things, Defendant's wrongful conduct and the resulting damage to DBE is continuing.

## COUNT 5

### Federal Trademark Dilution (15 U.S.C. § 1125(c))

91. DBE specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

92. DBE's 190 OCTANE Trademarks have been famous for a significant amount of time in relation to prepared alcoholic beverages and other related goods and services in the relevant marketplace.

93. Defendant's 190 ANTIFREEZE mark, and/or variants thereof that are similar to or likely to cause confusion with DBE's 190 OCTANE Trademarks, has been used in commerce in association with prepared alcoholic beverages and other related goods and services for Defendant's commercial gain.

94. Defendant has engaged in dilution by blurring because Defendant's use of the mark 190 ANTIFREEZE, and/or variants thereof that are similar to or likely to cause confusion DBE's 190 OCTANE Trademarks, is likely to cause an association arising from the similarity between Defendant's 190 ANTIFREEZE mark and DBE's 190 OCTANE Trademarks that impairs the actual or acquired distinctiveness of DBE's 190 OCTANE Trademarks.

95. Defendant has engaged in dilution by tarnishment because Defendant's use of the mark 190 ANTIFREEZE, and/or variants thereof that are similar to or likely to cause confusion with DBE's 190 OCTANE Trademarks, is likely to cause an association arising from the similarity between Defendant's 190 ANTIFREEZE mark and DBE's 190 OCTANE Trademarks that harms the reputation and goodwill associated with DBE's 190 OCTANE Trademarks.

96. Defendant's acts are likely to continue to cause an association arising from the similarity between Defendant's 190 ANTIFREEZE mark and DBE's 190 OCTANE Trademarks that lessens the capacity of DBE's 190 OCTANE Trademarks to identify and distinguish its goods and services from those of others.

97. Defendant willfully intended to trade on the recognition of DBE and its famous 190 OCTANE Trademarks in connection with prepared alcoholic beverages and other related goods and services.

98. Defendant's acts are in violation of 15 U.S.C. § 1125(c).

## VI. **REQUEST FOR RELIEF**

**WHEREFORE**, DBE hereby respectfully requests the following relief against Defendant, 407 Bourbon, LLC d/b/a Crescent City Pizza Works, as follows:

a) An award of Defendant's profits and DBE's damages for trademark infringement under 15 U.S.C. §§ 1114 and 1117, trebled, in an amount to be proven at trial;

b) An award of Defendant's profits and DBE's damages for false designation of origin under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

c) An award of Defendant's profits and DBE's damages for unfair competition under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

d) An injunction by this Court prohibiting Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: (1) engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein; (2) using without permission any mark or other intellectual property right of DBE; (3) acting to infringe the 190 OCTANE Trademarks; (4) acting in any other manner to derogate DBE's intellectual property rights; and (5) requiring Defendant to file with this Court and to serve upon DBE, within thirty (30) days after the service on Defendant of the injunction, or such extended period as this Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

e) An Order requiring that Defendant provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay DBE its ill-gotten gains obtained from the illegal transactions entered into and/or to pay restitution;

f) An Order that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to DBE;

g) Pursuant to 15 U.S.C. §1118, an Order requiring that Defendant and all others acting under Defendant's authority, at their cost, be required to deliver up to DBE for destruction all products, accessories, labels, signs, prints, packages, wrappers, marketing materials, and other material in their possession, custody, or control bearing the 190 ANTIFREEZE mark or any other mark that is confusingly similar to DBE's 190 OCTANE Trademarks;

h) Treble damages;

i) DBE's reasonable attorneys' fees;

j) All costs of suit;

k) Prejudgment interest; and

l) Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

By: _/s/ Benjamin W. Janke_
BENJAMIN W. JANKE (LA #31796)
EMILY A. GUIDA (LA #39901)
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
Email: bjanke@bakerdonelson.com
Email: eguida@bakerdonelson.com

**ATTORNEYS FOR DAVID BRIGGS ENTERPRISES, LLC**